JUDGE HERB ROSS (Recalled)

UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF ALASKA
605 West 4th Avenue, Room 138, Anchorage, AK 99501-2296 - (Website: www.akb.uscourts.gov)
Clerk's Office 907-271-2655 (1-800-859-8059 In-State) - Judge's Fax 907-271-2692

In re:

CHANNEL CONSTRUCTION, INC.,

Debtor.

Case No. J14-00103-HAR
In Chapter 11

MEMORANDUM REGARDING ATTORNEY FEES DUE FIRST BANK FOR ITS CLASS 3 CLAIM IN CONFIRMED PLAN

1. SUMMARY OF RULING . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

2. FACTS AND PROCEDURAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    2.1. Class 3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    2.2. The Attorney Fee Issue . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
    2.3. The Attorney Fee Clauses for the Class 3 Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

3. ANALYSIS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
    3.1. 11 USC §506(b) and Alaska State Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
    3.2. Did First Bank Vote in Favor of a Plan That Excluded or Waive Its Attorney Fees
          With Respect to Class 3? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
    3.3. Do Reasonable Attorney Fees Include Negotiation of the Plan? . . . . . . . . . . . . . . . 11
    3.4. What is the Reasonable Amount of Attorney Fees in This Case? . . . . . . . . . . . . . . 12

4. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

1. **SUMMARY OF RULING**- The debtor seeks to compel the restructuring of First Bank's oversecured $2.7 million Class 3 claim for just the amount of principal and interest owing, without including **$41,800** in attorney fees claimed by First Bank. However, the debtor did not identify the amount comprising Class 3 with sufficient clarity in the plan to exclude attorney fees and First Bank did not waive them.

The attorney fee clause in the Class 3 loan documents should be read broadly enough to allow reasonable attorney fees for First Bank's good faith negotiation of a consensual plan without

either party being the "prevailing party." But the $41,800 includes items not reasonably attributed to Class 3. The amount allowed is reduced by 50%, to **$20,937.50**, for the $41,800 fees and $75 in costs claimed by First Bank to reflect the amount attributable to Class 3.

## 2. FACTS AND PROCEDURAL BACKGROUND-

**2.1. Class 3**- The debtor confirmed a chapter 11 plan in April 2016.[1] Class 3 in the plan addressed a $2,770,909.22 secured claim by First Bank[2] which was the balance on the March 31, 2014 petition date. Payments were current when the case was filed and remained current post-petition through the confirmation date. The Class 3 debt was secured by real estate in Juneau, Alaska and heavy equipment having a combined collateral value of $4,000,000.

First Bank had three other secured claims (Classes 4, 5 and 6 under the confirmed plan) which were also current before and throughout the chapter 11 until the plan was confirmed.

During the chapter 11 proceeding, some of the equipment that was collateral for the Class 3 loan was sold with First Bank's consent and $720,026.20 in net proceeds was held pending further order of the court.[3]

First Bank negotiated a consensual treatment of Class 3: (a) a $300,000 payment on the promissory note's then current balance would be made after the effective date from the equipment sale proceeds; (b) the rest of the sale proceeds would be released by First Bank to allow debtor to partially fund payment to other creditors under the plan; (c) the new balance on the promissory note would be modified to be reamortized over the remaining term of the note at the existing 7.3% interest rate; and (d) First Bank would draft a new deed of trust and security agreement to

---

[1] ECF 267.

[2] Proof of Claim No. 29.

[3] ECF 149.

MEMORANDUM REGARDING ATTORNEY
FEES DUE FIRST BANK FOR ITS CLASS 3
CLAIM IN CONFIRMED PLAN                                                                 Page 2 of 14

collateralize the new note balance.[4]  First Bank voted to accept the proposed Class 3 treatment, as well as voting to accept the plan as to its other three claims, Classes 4, 5 and 6.

---

[4] *Debtor's Revised Plan of Reorganization*, ECF 263, page 5.  First Bank voted for this plan.  Class 3 provides:

### Class 3: First Bank - Loan 5800/Claim No. 29

*Description*

Class 3 is First Bank's Loan #725800, evidenced by a Note dated February 24, 2011, in the original amount $2,972,866.27, accruing interest at 7.30% per annum and payable over a 20 year term, secured by a first deed of trust on the Anka Street Property, a Commercial Security Agreement ("CSA") and Business Loan Agreement ("BLA") dated February 24, 2011, as perfected by a broad form UCC-1 No. 2011-712338-1 (filed March 3, 2011) and fixture filing No. 2011-001195-0 (recorded February 25, 2011). Copies of these documents are at Proof of Claim No. 29.  This claim is line #2428 on Debtor's balance sheets.

*Impairment*

This claim is impaired.

*Treatment*

On the Effective Date,

(a) Debtor shall pay Class 3, from the Wells Fargo Account, the sum $300,000. Payment terms for the remaining balance of the Class 3 claim shall modified such that the remaining balance is paid in equal monthly payments at the existing note rate over the existing remaining term;

(b) the CSA dated February 24, 2011 shall terminate as to Debtor's Equipment;

(c) First Bank shall record a UCC-3 amendment with respect to UCC-1 No. 2011-712338-1 deleting equipment from collateral; and

(d) Debtor shall execute a new deed of trust and associated security documents, in form acceptable to First Bank, in the Channel Drive property and associated tidelands and improvements.

When the Class 3 claim is paid in full, the underlying promissory note and any amendments thereto shall be returned marked PAID; the deeds of trust securing the loan shall be reconveyed; any remaining UCC-1 financing statements shall be terminated, and the BLA dated February 24, 2011 shall terminate.

This "consensual" treatment was not without a good degree of dissatisfaction by the debtor, which felt that First Bank had reneged on an understanding that the interest on the restructured Class 3 loan would be at 5.25%, instead of the 7.3%. Shortly before the confirmation hearing, however, that First Bank demanded interest remain at 7.3%. The parties have presented me with copies of e-mails between Bruce Moore, First Bank's attorney, and Cabot Christianson, the debtor's attorney, which show that the debtor's feeling it had been blindsided was not irrational.

On the other hand, First Bank let debtor know it would not agree to the 5.25% interest rate reduction in sufficient time for debtor to have sought a continuance of the confirmation hearing, and debtor could either have had a contested confirmation hearing or continued negotiations.

And, First Bank's position on the interest rate issue has some merit. Debtor knew that such a reduction had to be vetted by First Bank's compliance officer and approved by its board and professional advisors. First Bank's Class 3 loan was protected by a Bureau of Indian Affairs loan guaranty. Unilateral change of the interest rate could have voided the BIA guaranty, putting First Bank at substantial financial risk. Additionally, the compliance officer said a reduction in interest rate might be deemed to be a "troubled debt restructuring" which might have caused it regulatory problems with the FDIC.[5] This, of course, does not address the attorney fee issue facing the court now, but may explain the animus experienced by the parties involving the attorney fee issue.

2.2. <u>The Attorney Fee Issue</u> - The Class 3 claim treatment never precisely pins down what the restructured loan balance would be. Debtor's last monthly operating report has a balance sheet item for the Class 3 debt as of March 31, 2016, as **$2,578,403.94**.[6] This was the ballpark correct amortization of the note as to principal and interest as of that date **but does not address attorney fees and expenses**. Proof of Claim 29 showed the note balance, which was

---

[5] *See*, *First Bank's Response to Channel's Motion to Compel and Cross-Motion for Attorney Fees*. ECF 290, page 7 at ¶3 and Exhibits 2, 3 and 4.

[6] *Monthly Operating Reporting Requirements for Chapter 11 Debtors Corporations And Partnerships*. ECF 262, at page 8 (*Channel Construction, Inc. Balance Sheet As of March 31, 2016*).

current as of the date of filing and accurately showed no attorney fees were due on the petition date. But it also attached to the proof of claim four loan documents, each with their own attorney fee clauses.

It seems probable that both parties were operating in good faith. Attorney fees were barely alluded to in the negotiations and seems to have mostly dropped of the parties radar during the negotiations. But, Mr. Moore cautioned Mr. Christianson in an April 13, 2016 e-mail that the figures he quoted for the Class 3 loan (**$2,570,640.33**) were presumably only for principal note balance on the date of the last payment.  and **"For the record, these are balances and not payoffs**."[7] This cryptic reference to "payoffs" undoubtedly referred to attorney fees and costs. First Bank accepted the Class 3 treatment under the plan, but did it waive the right to reasonable attorney fees? As I have answered this question in Section 3.2 of this memorandum, I find that it did not.

When First Bank presented the reorganized debtor with the new loan documents to sign along with a Change in Terms Agreement in April 2016 (about two weeks after confirmation), it contained not only the $2,570,640.33 owed for principal and $14,395.59 interest on Class 3, but an additional **$41,800 for attorney fees and $75 in costs** for "Bankruptcy and related expenses" for the Class 3 claim.[8]

2.3. <u>The Attorney Fee Clauses for the Class 3 Claim</u>- There are four loan documents, each with its own attorney fee clause. The following is a summary, with the emphasis added by the debtor in its motion to compel[9]:

---

[7] E-mail from Bruce Moore to Cabot Christianson on April 13, 2016. ECF 287, Exhibit A.

[8] See proposed *Change of Terms Agreement*, ECF 290-1.

[9] *Motion to Compel First Bank to Comply with Plan*. ECF 287, pages 3-4, and pages 11, 18, and 28 of Exhibit B.

MEMORANDUM REGARDING ATTORNEY
 FEES DUE FIRST BANK FOR ITS CLASS 3
CLAIM IN CONFIRMED PLAN                                                                                   Page 5 of 14

‣ The **Promissory Note**:

> ATTORNEYS FEES; EXPENSES. Lender may hire or pay someone else to help collect this Note **if borrower does not pay**. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's **reasonable** attorneys' fees and Lender's legal expenses whether or not there is a lawsuit, including reasonable attorneys' fees and legal expenses for bankruptcy proceedings including efforts to modify or vacate any automatic stay or injunction appeals, and any anticipated post-judgment collection services. If not prohibited by applicable law, Borrower will pay any court costs, in addition to all other sums provided by law.

‣ The **Business Loan Agreement** (the BLA):

> **Attorneys Fees; Expenses**. Borrower agrees to pay upon demand all of Lender's costs and expenses, including Lender's reasonable attorneys' fees and Lender's legal expenses, **incurred in connection with the enforcement of this Agreement**. Lender may hire or pay someone else to help enforce this Agreement, and Borrower shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's reasonable attorneys' fees and legal expenses whether or not there is a lawsuit, including reasonable attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post -judgment collection services. Borrow also shall pay all court costs an such additional fees a may be directed by the court.

‣ The **Commercial Security Agreement** (the CSA):

> **Attorneys Fees; Expenses**. Grantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's reasonable attorneys' fees and Lender's legal expenses, **incurred in connection with the enforcement of this Agreement**. Lender may hire or pay someone else to help enforce this Agreement, and Grantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's reasonable attorneys' fees and legal expenses whether or not there is a lawsuit, including reasonable attorneys' fees and legal expenses of bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Grantor also shall pay all court costs and such additional fees as may be directed by the court.

‣ The **Deed of Trust**:

> **Attorneys Fees; Expenses**. If Lender institutes any suit or action to enforce any of the terms of this Deed of Trust, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved or pending, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the indebtedness payable on demand and shall bear interest at the Note rate

> unless payment of interest at rate would be contrary to applicable law, in which event such expenses shall bear interest at the highest rate permitted by applicable law from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject top any limits under applicable law, Lender's reasonable attorneys' fees and Lenders' legal expenses whether or not there is a lawsuit, including reasonable attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees, title insurance, and fees for the Trustee, to the extent permitted by applicable law. Grantor also will pay any court costs, in addition to all other sums provided by law.

First Bank said in the first hearing on debtor's motion to compel on September 9, 2016 that it was *not* relying on the clause in the promissory note, since the loan was not in arrears, but its fees were reasonable under the BLA and/or the CSA.

### 3. ANALYSIS-

### 3.1. 11 USC §506(b) and Alaska State Law- Section 506(b) provides:

> (b) To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section [not applicable in this case], is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement or State statute under which such claim arose.

The BLA[10] fits this description as an agreement about attorney fees governing an oversecured claim that would allow reasonable attorney fees "**incurred in connection with the enforcement of this Agreement**."  The BLA specifically alludes to bankruptcy situations covering:

> Costs and expenses include Lender's reasonable attorneys' fees and legal expenses whether or not there is a lawsuit, including reasonable attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), . . .

The Ninth Circuit Bankruptcy Panel held in In re Dalessio that "when fees are provided for in the underlying agreement, and when the creditor is oversecured, allowance of the attorney's

---

[10] See, Section 2.3 of this memorandum.

MEMORANDUM REGARDING ATTORNEY
 FEES DUE FIRST BANK FOR ITS CLASS 3
CLAIM IN CONFIRMED PLAN                                                                                                Page 7 of 14

fees is mandatory. However, this allowance is limited by the reasonableness requirement in § 506(b)."[11]

Sec. 506(b) was amended by BAPCPA to add coverage for attorney fees where provided for by "State statutes". Sec. 506(b) does not say whether a court should apply federal or state law in determining the enforceability of a *contractual provision* related to attorney's fees. Collier suggests it should be federal law.[12] The results in this case would probably have been the same if the court applied Alaska Rule of Civil Procedure 82(a):

> **Allowance to Prevailing Party**. Except as otherwise provided by law or agreed to by the parties, the prevailing party in a civil case shall be awarded attorney's fees calculated under this rule.

Debtor says that, in any event, there are no Alaska state law cases that are relevant.[13] Debtor cites cases from other jurisdictions. Tabatchnick Realty Group,[14] a New Jersey bankruptcy case dealt with a clause similar to the one in the First Bank promissory note. The parties agree in our case that the promissory note attorney fee clause only applies "if borrower does not pay." In our case, nonpayment was not an issue.

Also cited by debtor were several district court decisions in the Tenderloin Health bankruptcy case from the Northern District of California.[15] In that case, the loan documents had attorney fee clauses very similar to the ones in our case.

---

[11] In re Dalessio, 74 B.R. 721, 723 (9th Cir. BAP 1987).

[12] *Collier on Bankruptcy*, ¶4-506[3][b], **Entitlement to Fees Determined by Federal Law** (16th edition online as of 11/17/16), based on legislative history.

[13] *Supplemental Memo Re: Motion to Compel First Bank to Comply With Plan.* ECF 294, pages 5-6.

[14] Tabatchnick Realty Group LLC v. PNC Bank, NA, 2007 WL 557441 (D. New Jersey, 2007).

[15] In re Tenderloin Health, 2014 WL 4827114 (N.D. Cal. 2014) and In re Tenderloin Health, 2015 WL 7015559 (N.D.Cal. 2015). The bankruptcy adversary proceeding was Adv. Proc. No. 12-03171-HLB.

MEMORANDUM REGARDING ATTORNEY
 FEES DUE FIRST BANK FOR ITS CLASS 3
CLAIM IN CONFIRMED PLAN                                                                           Page 8 of 14

A chapter 7 trustee claimed a $190,000 payment made to a bank was preferential. The bank said it was not preferential because it either had both a fully funded collateral interest in debtor's deposit account with the bank and a right of setoff. The bankruptcy court held there was no preference based on bank's setoff right.

But, the bank's claim for attorney fees was denied. The bank relied on a California attorney fee statute relating to contracts. The court denied attorney fees since equitable setoff was a right under California common law, so the bank did not incur the fees to "enforce or interpret" the contract between the parties, but in utilizing the state's equitable setoff right it would have had independent of the contract. The bankruptcy court said: "The fact that the relevant loan documents mention or affirm a right that existed whether or not the parties reduced it to writing does not transform a common law or statutory right into a contractual one.").[16] This is probably the wrong result under the BAPCPA amendment to §506(b)(2), at least for a right to attorney fees under a *State statute*.

And, the 2015 district court order affirming the denial of the bank's attorney fees in Tenderloin Health was appealed to the Ninth Circuit in appellate Case No. 15-17433. In January 2016, the appeal was referred to appellate mediation. That appeal is apparently on hold pending resolution of the earlier appeal, appellate Case No. 14-17090, by the trustee of the 2014 district court decision upholding the bank's prevailing on the $190,000 preference issue. The 14-17090 appeal was argued on October 18, 2016. So, Tenderloin Health is still in play.

**3.2. Did First Bank Vote in Favor of a Plan That Excluded or Waive Its Attorney Fees With Respect to Class 3?**- "A chapter 11 plan resembles a consent decree and should be construed

---

[16] Adv. Proc. No. 12-03171-HLB, In re Tenderloin Health. *Order Following Remand*, ECF 71, 02/25/15, pages 4-5.

MEMORANDUM REGARDING ATTORNEY
FEES DUE FIRST BANK FOR ITS CLASS 3
CLAIM IN CONFIRMED PLAN                                                                 Page 9 of 14

as a contract. In interpreting the Plan, we look to state law for guidance."[17]  The Supreme Court of Alaska has ruled:

> The goal of contract interpretation is to give effect to the parties' reasonable expectations, which we assess by examining the language of the disputed provisions, the language of other provisions, relevant extrinsic evidence, and case law interpreting similar provisions. In reaching a reasonable interpretation of a contract, we attempt to give effect to all of its terms, if possible. We consider disputed language within the context of the whole contract and its purposes, and the circumstances surrounding its formation.[18]

The debtor acknowledges that any ambiguity in the contract should be construed against the drafter:

> To the extent that there is any uncertainty as to how the contract between the parties is to be construed, the law in Alaska, and everywhere else, is that an ambiguous contract will be construed against its drafter, in the absence of other means of ascertaining the reasonable expectations of the parties. *Cook v. Cook*, 249 P.3d 1070, 1078 (Alaska 2011), *Monzingo v. Alaska Air Group, Inc.*, 112 P.3d 655, 661 n. 29 (Alaska 2005). This general rule is in accord with the Restatement (Second) of Contracts § 206 (1981) [footnote omitted].[19]

It is a close factual call, but debtor's counsel had received e-mail notice that the principal and interest balance on the note was not the ***payoff amount***, making it incumbent on debtor to more clearly state the restructured claim balance.

I find that First Bank did not waive the right to attorney fees in relation to Class 3 by voting for the plan. The Supreme Court of Alaska discussed the high burden of establishing an implied waiver:

> A waiver can be accomplished either expressly or implicitly. An implied waiver arises where the course of conduct pursued evidences an intention to waive a right, or is inconsistent with any other intention than a waiver, or where neglect to insist upon the right results in prejudice to another party. To prove an implied waiver of a legal right, there must be direct, unequivocal conduct indicating a

---

[17] In re Captain Blythers, Inc., 311 B.R. 530, 536 (9th Cir. BAP 2004) (citations omitted).

[18] Matanuska Elec. Ass'n, Inc. v. Chugach Elec. Ass'n, Inc., 99 P.3d 553, 562 (Alaska 2004) [footnotes omitted].

[19] *Supplemental Memo Re: Motion to Compel First Bank to Comply With Plan*. ECF 294, page 6 (although debtor made these cites to argue that the BLA, if ambiguous, should be construed in debtor's favor).

MEMORANDUM REGARDING ATTORNEY
FEES DUE FIRST BANK FOR ITS CLASS 3
CLAIM IN CONFIRMED PLAN                                                                                    Page 10 of 14

purpose to abandon or waive the legal right, or acts amounting to an estoppel by the party whose conduct is to be construed as a waiver.[20]

I find the debtor has not established an implied waiver of First Bank's right to claim reasonable attorney fees for Class 3. In Section 3.4 of this memorandum, however, I reach the opposite conclusion as it relates to attorney fees for Classes 4, 5 and 6.

**3.3. Do Reasonable Attorney Fees Include Negotiation of the Plan?** - The debtor emphasizes that the Class 3 loan was not in default so no right to attorney fees exists.[21] First Bank does not dispute this regarding the attorney fee clause in the promissory note, but disagrees that its attorney fees were unreasonable for monitoring the case vis-a-vis Class 3, making sure its collateral was protected, and negotiating to help the debtor use part of the proceeds of the sale of First Bank's equipment collateral as exit financing to confirm the plan.

First Bank itemizes these endeavors in its response to the motion to compel, saying that: (1) it was justified in reasonably monitoring and negotiating about the sale of its equipment and escrowing the net proceeds; (2) it was justified in reasonably monitoring the sale of some real estate assets; (3) it was reasonably justified in negotiating a plan to protect its own business interests while assisting the debtor to reorganize.[22]

These activities fit within the ambit of incurring legal fees "in connection with enforcement of this Agreement." Many attorney fee clauses seem predicated on figuring who is the "prevailing party" - a "**win-lose**" paradigm.

Chapter 11 cases rarely benefit from litigating their myriad legal and factual disputes to a conclusion. On the other hand, negotiation and compromise are the goal - a "**win-win**" situation. Collier notes:

---

[20] Airoulofski v. State, 922 P.2d 889, 894 (Alaska 1996).

[21] *Motion to Compel First Bank to Comply with Plan.* ECF 287, pages 3-5.

[22] ECF 290, pages 6-8.

MEMORANDUM REGARDING ATTORNEY
 FEES DUE FIRST BANK FOR ITS CLASS 3
CLAIM IN CONFIRMED PLAN                                                                                    Page 11 of 14

> The hallmark of chapter 11 is flexibility. The debtor in possession is offered considerable discretion in the operation of the business, constrained generally only by a business judgment rule. The plan negotiation process is intended to lead normally to a consensual plan under which the debtor and a majority of creditors have agreed to both business and financial plans that offer some realistic chance of success. The court is given considerable discretion in evaluating a debtor's proposed use of property, offer of adequate protection, proposed borrowing, and other business decisions [footnotes omitted].[23]

This case would have been enormously more expensive for debtor (without regard to paying First Bank's attorney fees) if it had to engage in a contested confirmation hearing on the interest rate, etc.  The best case I have found espousing the allowance of reasonable attorney fees for negotiations is In re Amherst Orthopedic Associates, P.C. by a bankruptcy judge in New York.  Despite being oversecured with collateral six times the amount of indebtedness, a creditor was entitled to recover reasonable contractual attorney fees in negotiating cash collateral issues.[24]  And the judge reduced fees that he found only tangentially related to protecting the creditor's interest in a reasonable way by being too aggressively proactive in light of its healthy equity cushion.

First Bank did not attempt to milk this case for fees.  It was generally reasonable in incurring attorney fees.

**3.4. What is the Reasonable Amount of Attorney Fees in This Case?**- Because of the way the motion to compel and additional briefing[25] have been presented to the court, the court cannot approve the entire $41,800 attorney fee request.  There is no provision clearly applying the attorney fee clauses in the Class 3 loan documents to the other three loans.

---

[23] *Collier on Bankruptcy*, ¶7-1100, **Overview of Chapter 11 Policies**  (16th edition online as of 11/17/16). *See, also, Collier on Bankruptcy Practice*, ¶5-90.03[2], **Dynamics of Negotiation**   (online as of 11/17/16) ("The negotiation of a chapter 11 plan will ordinarily be the most intense and critical aspect of a chapter 11 case.").

[24] In re Amherst Orthopedic Associates, P.C., 355 B.R. 420, 424-25 (Bankr. WDNY 2006).

[25] ECFs 287, 290, 291, 294, 297 and 298.

MEMORANDUM REGARDING ATTORNEY
 FEES DUE FIRST BANK FOR ITS CLASS 3
CLAIM IN CONFIRMED PLAN                                                                                         Page 12 of 14

In its initial motion to compel, debtor attached only the four loan documents related to its loan number xx5800, which are the Class 3 loan documents. Obviously, some of the billing related to the other three First Bank plan classes, Classes 4, 5 and 6. The court does not agree with First Bank that " The Business Loan Agreement applies to entire lending relationship between First Bank and Channel."[26] Contrary to the court's conclusion regarding Class 3 that First Bank did not waive attorney fee, First Bank *did* waive any right to attorney fees and costs with respect to Classes 4, 5 and 6. It presented no evidence relating to the loan documents for those secured claims and, indeed, apparently accepted the plan as to these three classes without an attorney fee and cost demand specific to those classes.

A copy of First Bank's $41,800 attorney fee bill is included in *Debtor's Supplemental Memorandum Re: Motion to Compel First Bank to Comply with Plan.*[27] The debtor annotated the First Bank bill for analysis purposes, in an attempt to show that some of the work did not relate to Class 3.[28] Debtor came up with four categories of work showing, in its opinion, that the total bill was unreasonably high:

- Category A, Fees unrelated to four notes - **$3,144.00**
- Category B, Fees related to bankruptcy cased generally, or that cannot be allocated to any one particular loan - **$13,973.00**
- Category C, Fees related to the Class 4 line of credit rollover in 2014- **$4,247.50**
- Category D, Fees related to treatment of the bank's loans in the plan of reorganization- **$20,447.00**
- Total - **$41,875.00** [there is a small addition error in debtor's analysis]

Debtor has convinced me that the bill should be trimmed to exclude all attorney fees claimed by First Bank's attorneys except as it relates to Class 3. Rather than go through the tedious and imponderable task of prorating many of the time entries to come up with a more precise number, given the sparse record, I will take the $41,800.00 in fees and $75 in costs and cut

---

[26] ECF 290, page 4.

[27] ECF 294, pages 14-56.

[28] ECF 294, pages 10-11, 14-56.

MEMORANDUM REGARDING ATTORNEY
 FEES DUE FIRST BANK FOR ITS CLASS 3
CLAIM IN CONFIRMED PLAN                                                                                          Page 13 of 14

it in half to a total of **$20,937.50** as a reasonable approximation what is allowable for Class 3 attorney fees and costs.

    **4.** <u>CONCLUSION</u>- A separate order will be entered.

November 21, 2016.

                        /s/ Herb Ross
                        HERB ROSS
               U.S. Bankruptcy Judge

<u>Serve</u> :
Cabot Christianson, Esq., for Debtor
Bruce Moore, Esq., for First Bank
U.S. Trustee

MEMORANDUM REGARDING ATTORNEY
FEES DUE FIRST BANK FOR ITS CLASS 3
CLAIM IN CONFIRMED PLAN